We'll proceed now with argument in Lepe v. Holub. Counsel, we continue the case because of the confusion on the date. And we'll now hear from the appellant. Thank you, Your Honor. James Andre Volz for the appellant, Plaintiff Mr. Lepe. First, I'd like to thank the court for allowing this thing to go at this time because it was a problem with my calendar that necessitated it. So I appreciate the court's indulgence. The other thing is I have to apologize. I just walked out of district court in Nevada. So I'm doing this without my notes, but I'm quite familiar with the case. I'd like to start by talking about the facts of the case and about Mr. Lepe, who at the time was still a teenager residing, a teenager from Mexico with almost, well, I could almost say absolutely no grasp of the English language and was in the- Counsel, this is Judge Kleinfeld. Could you help me on what is the key question for me in this case? I'm sure that my colleagues will also have some questions. For me, the key question is whether after the criminal proceeding was favorably concluded against Lepe and the civil proceeding was still pending, he could have and was obligated to amend his complaint to add the additional claims that had previously been barred by Heck v. Humphrey. Do you understand the question? I do, Your Honor. And the question, as I see it, is not whether he was required to amend the other complaints, which had already been in litigation for some period of time, but whether that case could be brought as a separate case. And, of course, it perhaps could have been brought with the previous case, but was it a requirement that it be brought as part of the earlier case, Your Honor? And since it stood alone as a separate claim, as a separate offense in this case, that was why we felt that since it was a stand-alone- Was it out of the same nucleus of fact, common nucleus of fact? Well, in that, if it had been just brought as strictly as a state claim, it would have been a malicious prosecution. And the malicious prosecution occurs after the fact. That is, in this case, they brought the prosecution knowing full well, after having been told by the judge that they had a very weak case and it shouldn't proceed forward, was the- Let me focus you a little more narrowly on my concern. I noticed that the pretrial order said that the time for motions for leave to amend was over before you could bring the case for the malicious prosecution or false imprisonment. However, Rule 15 says leave to amend will be freely granted. And I'm wondering if there was really anything to stop you from filing a motion for leave to amend with a paragraph justifying its excuse, or maybe a separate motion asking for an extension of the date for leave to amend, because the claim did not accrue until the criminal proceeding was favorably concluded. It looks to me as though there was a lot of time, a number of months, between when you could have brought this claim and when the civil action was concluded. Well, I can't take issue with that, Your Honor. The fact of the matter is, even though the time had run to amend claims, that is really more of a question, or at least as we perceived it at the time, a question of whether we should attempt to amend or bring it as a separate claim. And in that, we were not specifically barred from bringing it as a separate claim. And in that, it was, again, I go back to that, it was a stand-alone offense, as we viewed it, as we still do. And since the court had cut off the time to amend, and it's something that, again, is just personal experience, depending on whose courtroom you're in, whether you're allowed to amend. Even if it should be freely given, in practice, that's not always the case. So since it was clear on its face that the time was up to amend, I felt compelled to file it as a separate case. Obviously, it would have been to our advantage to file it as an amendment. But since discovery had already run, and there are the constraints on the district courts in all states, but in particular Nevada, to bring these cases to trial within a certain period of time, then I don't think Mr. Leffy should be penalized for what is a rather rigid reading of the rule. And that's something we did more out of a sense of caution than anything else. Counsel, this is Judge Layton. Perhaps as a segue into my question, and that has to do with the savings clause in the settlement agreement. Could you describe more particularly what was discussed with regard to the claims that Mr. Leffy was going to reserve out of the criminal prosecution that followed his arrest? Well, Your Honor, and I thought that that had been very clearly set forth in the settlement agreement. It was an afterthought. It was not offered, and we discussed settling the case. And at the time of settling the case, they provided us, as typically defendants do, with that document. And that change to the document that saved his claim, it was my understanding at the time between discussions with counsel that there would be no issue as to his ability to bring this claim of what I'm going to call malicious prosecution, because I think it's just a little more apt than referring to it as a fourth amendment violation. Do I understand this right? The first case was essentially about beating him up, and the second case is about holding him in jail for three and a half years after that. Well, he wasn't in jail that entire time, but he was in jail for a period of time. But it was the fact that he'd lost his liberty and he was out on trial. Hold on. Be a little less abstract for me. When was he in jail and for how long? Like I said, I have to apologize. I don't have my notes in front of me, but I think he was in jail about 30 days, Your Honor. He spent about 30 days in jail? I believe that. Was that immediately after they beat him up and arrested him? That's correct, Your Honor. Is that 30 days what the second case is about? I mean, I know the legal concepts that describe the causes of action are more abstract than that, but the damages claim has to be about something, and I wonder if that's what it's about. That did flux, Your Honor. The other thing is that this was a very expensive criminal litigation because even though it ended with an acquittal in justice court, if you look at the history of this, it's rather circuitous. Because what happened here, he was arrested. He was later brought to preliminary hearing with the other first appearance and whatever else there is. So the damages besides the loss of liberty for 30 days in jail will be the expense of beating the criminal case? That's correct, Your Honor. And that criminal case went from justice court up to district court, went back down because they decided they didn't want to try to risk this case in front of a jury, so they sent it back down to justice court, went from justice court to trial in front of Judge Roby Willis, and Judge Willis, the same judge who told them not to proceed on the case, found the young man not guilty. But this didn't happen in a matter of a few months. This case was stretched out over a very long time. I'm thinking close to a year, maybe longer, before it was actually went to trial and the young man was acquitted. So that was a rather large thought, the criminal matter was. So the damages are not only the incarceration plus the loss of freedom plus the amount of money it costs to take the case to trial. Are we there? Thanks. That answers my questions. If there's no other questions, I'd like to save what time I have left for the 20 minutes. Unless my colleagues have further questions, that's what we'll do. We'll hear from Appleby. Thank you, Your Honor. First of all, with respect to the length of time that Mr. Lepe was in jail, just so that we have this clear on the record, he was arrested on January 26th of 1999. He was released on February 11th of 1999. And from Your Honor's questions, one of the first things that jumps out at me is this issue about the release. The release that was signed by Mr. Lepe in July of 2003 held open the possibility that one thing and one thing only might happen, and that is that he might pursue a claim down the road for malicious prosecution. In that regard, I'd like to point out that the claims that were brought by Mr. Lepe in the second complaint filed in May of 2004 in the district court brings a claim for relief for false arrest, a claim for relief for county liability, and no 1983 claim for malicious prosecution. There is a false arrest claim and a state claim for malicious prosecution. Those two federal claims that were brought in the second complaint in May of 2004 were brought or could have been brought and pursued when Mr. Lepe filed his initial complaint in January of 2001. There is no claim for malicious prosecution pled under 1983. The district court in its order... ...in view of the wording of the release. Yes, sir. It says in the second paragraph, nor does this agreement bar Lepe from bringing other actions which have arisen since the filing of the action. Correct. And as far as I can tell, the claim for the false imprisonment and malicious prosecution did arise, well, let's see, after the events of the action. Did they arise after the filing? Yes. Okay. Your Honor, with respect to that sentence, actions which have arisen since the filing of the action, the malicious prosecution claim is the only claim led by Mr. Lepe for which his acquittal of the criminal charges in May of 2002 has any relevance whatsoever. That is a state court claim that was dismissed by the district court on jurisdictional grounds. The court did not look at that from a substantive law issue. Let me tell you why I'm confused. It looks to me as though under Heck v. Humphrey, the claims that required favorable termination of the criminal proceedings did not arise and had not arisen at the time of the filing of the action. They required the subsequent event before they accrued. The subsequent event being Mr. Lepe's acquittal in May of 2002? Yes. From a perspective of Heck v. Humphrey, Your Honor, from the standpoint of a malicious prosecution claim, it would be true that the happening of the event, his acquittal in May of 2002, is relevant. However, the only federal claim that Mr. Lepe brought in his second complaint against Mr. Holub under 1983 in the county was for false arrest and for certain alleged negligent training, hiring, and supervision on behalf of the county. There is no malicious prosecution claim that has been brought by Mr. Lepe in his complaint filed May 5, 2004. So there is no federal claim that's implicated with this release. The only thing that the acquittal is relevant to is a claim for malicious prosecution that was brought under state law. The district court was correct in dismissing the federal claims that were brought in the second complaint because those are barred by claim preclusion and by the scope of this release. Judge Thomas, why wouldn't a false arrest claim be Heck-barred at the time as well? Your Honor, with respect to the decision in Heck v. Humphreys, this court pointed out in Cabrera v. The City of Huntington Park that Heck doesn't change the general rule that a 1983 claim seeking damages for an alleged unconstitutional arrest approves at the time of the arrest. It's only under limited circumstances when a 1983 plaintiff's success on a claim that a warrantless arrest was not supported by probable cause would the Heck decision really change the analysis. Yeah, but that's what he's claiming here, isn't it? I don't believe that that's what he's claiming, Your Honor. The claims set forth in the first complaint and those set forth in the second complaint with respect to his arrest are almost identical. In the first complaint, he alleges that he was arrested wrongfully and his complaint actually says he was unlawfully seized in violation of the Fourth Amendment because Holub allegedly made false claims about the fact that Mr. Lepe had a knife at the time of his arrest. The second complaint makes the same claim, that Mr. Holub arrested Mr. Lepe unlawfully under the false claim that he had a knife. I don't think that there is any sort of Heck-type argument that can be made with respect to the false arrest claim set forth in the second complaint. It would only be at issue with a malicious prosecution claim, which is not pled in the second complaint under 1983. Why is this a false arrest claim barred? I don't understand. I'm looking at it in the complaint. It says the arrest was barred on a false accusation and he was unlawfully deprived of his liberty from the time he became incarcerated up to and including his trial. It seems like that would require favorable termination. Your Honor, we don't believe that it would require favorable termination. We believe that the facts that Mr. Lepe had in his possession at the time he was arrested is what compels the false arrest argument. The question that gets raised in Heck v. Humphrey, which becomes an issue... We held in a case called Irwin that full knowledge of all the grounds for the complaint does not cause the statute of limitations to run where under Heck v. Humphrey the claim cannot yet be brought. Well, we believe, Your Honor, that the claims for false arrest against Deputy Holub are separate and distinct from any claim for malicious prosecution and that the false arrest claim focuses upon what the officers knew at the time of the warrantless arrest, not anything that happened later, and that a malicious prosecution claim such as the one brought under state law is the only thing that would require there to be a favorable termination of the underlying criminal action. Are you saying, counsel, that if Mr. Lepe had been convicted, that he could still maintain a false arrest allegation against the officer and that the evidence would have been limited to what the officer knew at the time of the arrest and the conviction would have been excluded? The evidence of the conviction? That seems a bridge too far for me. In that regard, and I'm sorry, I'm having a little bit of trouble hearing you. Do you want me to restate my question? I would appreciate it, Your Honor. All right. Are you contending that if Mr. Lepe had been convicted of the underlying criminal offense, that he nevertheless could have maintained an action for false arrest against the officer and at the time of trial the evidence would have been limited to what the officer knew at the time of the arrest and did at the time of the arrest, and evidence of the conviction would have been excluded? Well, not necessarily, Your Honor. I think that we're dealing with two separate animals. The one being the false arrest, the claim of, or the issue is, whether there was probable cause for the arrest as of January 26, 1999, when he was arrested, and a completely different claim for malicious prosecution that may be brought at a later time. I don't think that the arrest necessarily, or the conviction, excuse me, would be excluded. Well, the problem, it seems to me, with your argument is that the idea of HECC is that it bars a claim that would be inconsistent with an underlying conviction. I think this is what Judge Clayton is getting to, is that I don't see how he could maintain a false arrest claim if he had been convicted. So it seems to me that this particular false arrest claim was HECC-barred at the time. Your Honor, one other thing that I'd like to mention in that regard is that Mr. Lepe was arrested, and there was a probable cause hearing held at a later time, and Mr. Lepe was bound over for trial. Concerning a malicious prosecution claim itself, I believe that would be barred, because there has been a judgment by a court of competent jurisdiction that there was probable cause. And the issue with respect to a wrongful arrest claim is whether there was probable cause to make that arrest. That issue wasn't decided by the district court? That issue wasn't decided by the district court because the malicious prosecution claim was brought under state law only. This issue with respect to whether Mr. Lepe needed to wait until the time that his underlying criminal conviction was resolved favorably for him was not addressed by the district court because it did not find, nor does the complaint support, the allegation that Mr. Lepe has brought a 1983 claim for malicious prosecution. The state law claim for malicious prosecution was dismissed on jurisdictional grounds. I guess I understand what you've said so far, but I'm still troubled. And let me tell you what my trouble is so you can address it real specifically. It looks to me as though HECS did bar him from bringing a claim for his imprisonment, detention, commencement of criminal prosecution, and deprivation of liberty during his incarceration until he got a favorable termination. And it looks to me as though while he could have sought leave to amend, he was far from guaranteed a favorable decision on leave to amend because the first litigation was already beyond that date in the pretrial order. And the counsel is right that judges have discretion on that and when you get close to trial and the end of discovery, they're often reluctant to change the whole nature of a case. So I'm thinking, well, he couldn't have brought what he's suing about now, then, as a matter of right. Good chance he couldn't have brought it as a matter of discretion, so why can't he bring it later? His knowledge just doesn't matter under our decision in Irwin. We said he knew absolutely everything years before he sued, but it just didn't matter because until HECS versus Humphrey let the cause of action accrue, the time didn't run. So I'm thinking if we just take all those things in line and we take that footnote in the Oh, I just forgot the name of the decision. I think it was Los Angeles Branch of NAACP, but I'm not sure. Or Cabrera, maybe. That's what it was, Cabrera. It looks as though he can bring the second action. And if there's good reason why not, make it clear to me. Certainly, Your Honor. Whether Mr. Lepe would have a right after the termination of the criminal prosecution of him in a favorable manner under 1983, the question here is, in his second complaint filed in May of 2004, he has not brought a 1983 claim for malicious prosecution. He has brought a claim only against Deputy Holub related to the arrest. With respect to what happened later and could he maintain an action for malicious prosecution after his acquittal, that claim perhaps could be brought. He has not, in fact, brought that in his second complaint. The decision with respect to whether to prosecute Mr. Lepe Counsel, I read the second complaint as being a little broader than you do. But anyway, it's subject to Amendment 2. And we've got a case called the Mfoyo v. Litton Electro-Optical System. It says, you look at four criteria and you do not apply them mechanistically. Number one, whether they choose to rise out of the same transactional nucleus of facts. Well, here probably they did. Two, whether the rights and interests established in the prior judgment would be destroyed or impaired by prosecution of the second action. Well, probably not because of the exception in the release, the reserve claim in the release. Number three, whether they involve infringement of the same rights. Well, really not because the first one is for beating them up and the second one is for holding them in jail or under condition to bail. A lot of money. Subsequent, even years subsequent to the beating. Number four, whether substantially the same evidence is presented in the two actions. Well, there's going to be overlap, but it's not going to be the same. All the damages evidence is going to be different. So when I look at these non-mechanistic four factors, I don't see the strength of what you've got. Well, with respect to the second complaint and the first complaint, and when you look at those and compare them, Mr. Lepe did allege that he was seized unlawfully in violation of the Fourth Amendment, and that is how we have read what he's pled in the second complaint, again, not yet reaching the issue of potential municipal liability. But as we have read the complaint, there did not appear and does not appear to be a malicious prosecution claim that's been brought under 1983. There was a state law claim for malicious prosecution brought and dismissed on jurisdictional grounds. So we see these as being similar claims that were raised in the first complaint and the second complaint, which focus upon the actions of Mr. Holub on January 26, 1999, not anything that happened later and not anything that implicates his acquittal in May of 2002. Do you want to talk more specifically about paragraph 21 of the complaint? I'm looking at the complaint, Your Honor. And again, when you look at paragraph 21 of the complaint and when you look at the old complaint, we find those allegations in both to be very similar with respect to what they're claiming under the Fourth Amendment. Sounds like we're out of questions. I don't have the time clock before me. Is there more time? Your Honor, I believe I have just a couple of more minutes. And it's unclear to me right now whether you would like me to address the issue of the claims that have been brought again against Sheriff Bannister and the county for failure to train, hire, and retain Deputy Holub. As we set forth in our briefing, those claims accrued at the time of the arrest of Mr. Lepe in January of 1999. We believe that those are clearly precluded as we set forth in our briefing. And I'll address those claims for negligent training and hiring if the Court wishes. Okay. I think you're briefed adequately on that. Thank you, Counsel. Thank you. Appellant Counsel, retain some time. Thank you, Your Honor. Two issues make this, in my mind, extremely simple. Number one, we saved our rights. We got a waiver from them in the agreement to settle in the original case. And it was always and continues to be a Hex v. Humphrey case. We couldn't bring the case, and we only brought the case after a successful termination of the case, and we did so pursuant to the Hex v. Humphrey doctrine. So it just was very straightforward at the time. And if I confused anyone by talking about malicious prosecution, when I did so, I was only comparing it as being synonymous with a Fourth Amendment violation as defined in the Hex v. Humphrey case. So is there a claim for preclusion? Well, had we not included the saving language in the settlement agreement, I would agree. But since we did include that in the settlement agreement, and since there were these other issues, that is the ability of the court to move these cases along, that's exactly why we included that, because dealing with these cases, both Hex v. Humphrey cases and any other case, you've got a deadline to meet, and the district courts have to meet the deadline. We saved ourselves with the language in the settlement agreement, and we never could have brought this case until we had gotten the young man acquitted. Counsel, explain to me why you think that the Monell claim was Hex barred. If you're claiming negligent training, that doesn't necessarily implicate the conviction, so why couldn't you have brought the negligent training count in the first place? Well, without the successful resolution, I don't know that we could have proven it. We never could have proved that claim without the successful resolution. I would agree that on its face, it doesn't appear to be Hex barred, but if you don't have a successful acquittal, a resolution of the underlying case, then you're not going to be able to prove your case. So I don't know. Would it be barred, Hex barred? I'll leave that for the courts to decide. But just as far as our rationale in bringing that case when we did, it's more a matter of proof, and perhaps without the stating language, that would be barred by claim preclusion. We decide it either way, but it would be nice to have your help. Do you happen to have some authority for us on that? I do not, Your Honor. I apologize. I don't have an authority on that. Thank you, counsel. Absent any questions, that's all I have to say. Thank you. Thank you, Your Honor. Thank you, counsel. LEPE v. Holoff is submitted.
judges: Kleinfeld, Thomas, Leighton